## MANAHAN v. THE STATE.

[No. 2,579.    Filed October 26, 1897.]

CRIMINAL LAW.—*Assault and Battery.*—In a prosecution for assault and battery the evidence showed that the prosecuting witness made persistent and repeated demands of defendant for the payment of a debt, having previously stated that he was going to collect the debt or have trouble. Defendant stated that he did not have the money and turned to go away, when the prosecuting witness seized defendant with both hands and jerked him back, whereupon defendant struck him. *Held*, that defendant was not guilty of assault and battery. *p. 301.*

APPEAL.—*Sufficiency of Evidence.*—In determining whether there is evidence in the record to support the judgment, it is not sufficient to select parts of it merely, but the court will be guided by the evidence as a whole. *p. 303.*

Manahan *v.* The State.

From the Sullivan Circuit Court. *Reversed.*

*William T. Douthitt,* for appellant.

*W. A. Ketcham,* Attorney-General, *Merrill Moores, C. D. Hunt* and *W. H. Bridwell,* for State.

WILEY, C. J.—Appellant was indicted for assault and battery, tried by the court, found guilty, and his punishment fixed at a fine of one dollar. His motion for a new trial was overruled, and this is the only error assigned. In his motion for a new trial, appellant assigned three causes: (1) The finding of the court was contrary to law; (2) the finding of the court was contrary to the evidence, and (3) the finding of the court was made and judgment pronounced in his absence, without notice or giving him an opportunity to be present. The indictment is not in the record, but there is enough in the record to show that one Charles Wence was the alleged injured party. The court heard the evidence and took the case under advisement, and about two weeks afterwards, in the absence of the appellant, but while his counsel was present, in open court, the court made its finding and pronounced judgment thereon, and on the same day the appellant filed his motion for a new trial. Appellant strenuously insists that there is no evidence in the record to support the finding and judgment. The evidence shows that the appellant was indebted to the prosecuting witness, Charles Wence, in the sum of $1.00 for labor performed, and Wence, hearing that he was at a certain saloon, went there for the purpose of collecting the money. Upon finding appellant at the saloon, Wence demanded payment, and appellant replied that he did not have any money, but would pay him soon. Wence then demanded payment several times in the presence of the bystanders, when appellant turned from him

and left the saloon. Wence followed him out, and again asked him for the money. Appellant returned to the saloon, Wence following him. When they had both entered, he again demanded payment, and at this point the difficulty took place which resulted in this prosecution.

As the evidence is very brief, we will quote so much of it as is pertinent. Charles Wence testified as follows: "I inquired for him (appellant) to collect my money. I asked several persons where he was, and was informed he was in the saloon. I went into the saloon and asked Manahan for the dollar he owed me. He replied he did not have the money. I asked him again for it two or three times, and he started to go away, and he struck me in the face. I do not remember whether or not I grabbed him with both hands and pulled him back before he struck me. He tried to get away and I would not let him go. I threw him to the floor and held him there until some one took me off of him. He did not try to strike me but the one time. I am much larger than Manahan, and would not let him get away."

Ira Patten: "I was in the saloon at the time of the trouble, but I did not see Manahan strike Wence. The first I saw, Wence threw Manahan to the floor and held him there until he was taken off. Wence is the larger man of the two."

John Quackenbush: "I was in the saloon at the time of the trouble, but I did not see anything of it until they were on the floor. Wence was on top."

This was all the evidence on behalf of the State.

Appellant testified in his own behalf and said: "The first thing I saw of Wence at the time of the trouble was when he came into the saloon. I had been informed by Ed. Myers that Wence had said to him, 'I am going to have that dollar to-night or have trouble,'

and that he had said, on entering the saloon, 'I am going to get my dollar; watch me, and see if I don't get it.' Wence came up and asked me for the dollar, and I told him I did not have the money. * * * He kept asking me for the dollar in the presence of the bystanders, and I told him I could not pay it.' He asked me for it five or six times, and I went out of the back door and he followed me out there and asked me for it again. * * * I went back in the saloon and he followed me there and kept asking me for the money, and I started to leave and Wence grabbed me with both hands and jerked me back. When he jerked me back, I slapped him in the face. I tried to get away before he grabbed me, but I could not for his grasp. I did not attempt to hit him but one lick, and that was after he grabbed me with both hands and pulled me back. Some one pulled him off of me and I got up and went home."

Ed. Myers: "I saw Wence as he entered the saloon. * * * Wence seemed angry and said that Manahan owed him a dollar and he was going to get it. Wence said: 'Manahan owes me a dollar and I am going to get it. Watch me, and see if I don't get it.' * * * I heard him ask Manahan for the money and heard Manahan tell him that he did not have it. * * * I was not present when the fight occurred. I told Manahan what Wence had said before the fight occurred."

Wm. Norton: "I was in the saloon at the time of the trouble. I heard Wence ask Manahan for the money several times, and every time Manahan told Wence that he could not pay it, or he did not have the money. As Manahan started to leave, Wence grabbed him with both hands and jerked him back. Wence would not let Manahan go. Just then Manahan hit Wence in the face, and Wence threw him to the floor,

and held him there until I pulled him off. Manahan did not attempt to strike but one lick, and that was after Wence had grabbed him with both hands and jerked him back. Wence is larger than Manahan."

Floyd Lowey: "I heard Wence ask Manahan for a dollar several times, and I was out at the back door of the saloon and saw Wence follow Manahan out there. * * * I saw Manahan go back into the saloon, and Wence followed him. Wence again asked Manahan for the dollar and Manahan started to go away. Wence grabbed him with both hands and pulled him back. Then Manahan struck him in the face. Wence threw Manahan to the floor and held him there till Wm. Norton pulled him off."

This was all the evidence bearing upon the guilt of the appellant, and when epitomized, resolves itself into the following: Appellant owed Wence one dollar; importunate demands were made upon him for payment, which he was unable to make; Wence was unreasonably solicitous and unreasonable in his demand; he was going to collect the dollar or have trouble, and the appellant, to avoid trouble, he having been informed what Wence had said, went out of the saloon to get away from him, but being followed by him, returned to the saloon and was again followed by Wence, and after other demands were made, turned to go away from him again, and thereupon Wence grabbed him with both hands, jerked him back, and then appellant struck him in the face.

It is upon these facts that the State grounded its right of conviction, and now insists on an affirmance of the judgment.

We are unable to see, upon all the facts disclosed by the record, wherein the appellant was guilty of the crime charged.

From the beginning to the end of the trouble Wence

was the aggressor, and appellant did no more than attempt to defend himself from the unprovoked assault upon him. The conduct, demeanor, and manner of Wence were rude and insolent, and appellant did all that any reasonable man could have done to avoid the encounter upon which Wence seemed determined. The learned Attorney General insists that there is some evidence which supports the finding and judgment, and hence this court cannot disturb the judgment, under the rule that where there is some evidence in support of it, the appellate tribunal will not weigh the evidence, but will let the judgment stand. If we could take the evidence of the prosecuting witness alone, we concede that there would be evidence upon which the judgment might firmly rest, for he said: "I asked him (appellant) for it (the money) again two or three times, and he started to go away and he struck me in the face." As to whether he first "grabbed" appellant, he says he does not remember, but says he tried to get away, and he would not let him. Suppose he had admitted that as appellant turned to go away he grabbed him with both hands and jerked him back before appellant struck him, would it be contended that such evidence would warrant a finding and judgment of guilty? We think not. And yet this is what the uncontradicted evidence shows occurred.

Ira Patten and John Quackenbush, witnesses for the State, were in the saloon, but did not see any of the trouble till Wence had appellant on the floor, and hence the prosecution rested solely on the evidence of Wence.

Appellant's version of his controversy and encounter with Wence is corroborated in every material detail by Wm. Norton and Floyd Lowry. Norton testified that as appellant started to leave, Wence grabbed him with both hands, jerked him back, would not let

him go, and then appellant hit him, etc. Lowry said: "Wence grabbed him with both hands and pulled him back, then Manahan struck him in the face."

Wence did not deny any of these statements, nor did he deny that he told Myers that he was going to collect the dollar appellant owed him, or have trouble.

In determining whether or not there is evidence in the record to support the judgment, it is not sufficient to select parts of it merely, but we must look at all of the evidence, and be guided by it as a whole. Considering all the evidence in the record, we conclude that there is no evidence to support the judgment. In our judgment, this evidence leaves standing a reasonable hypothesis of appellant's innocence, and in the face of this fact a judgment of conviction will not be affirmed. *Hamilton* v. *State*, 142 Ind. 276.

When appellant struck Wence, who was the larger man, it was after he had been rudely and insolently assaulted, and he was but exercising the natural and legal right of self-defense.

It is unnecessary for us to prolong this opinion in discussing the doctrine of self-defense. It is sufficient to say, in the language of the text writers, that "The right of self-defense is derived from nature. To repel force by force is the common instinct of every creature that has means of defense. Sudden and strong resistance to unrighteous attack is not merely a thing to be tolerated; in many cases it is a moral duty." 21 Am. and Eng. Enc. of Law, 1058.

In the case at bar, from all the facts disclosed by the record, appellant was justified in invoking this right, in attempting to resist an "unrighteous attack" upon his person. As the question presented by appellant in his third reason assigned for a new trial, viz., that he was not present in court when judgment was

The Indiana Mutual, etc., Association *et al. v.* Paxton *et al.*

pronounced against him, is not likely to arise again, it is unnecessary for us to consider it.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.